THE HOWARD SAVINGS INSTITUTION, EXECUTOR AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF EVA KIELB, DECEASED, PLAINTIFF, v. WALTER KIELB, JR., *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

*Decided February 21, 1961.*

*Mr. David Weinick* and *Mr. Francis J. Tansey,* attorneys for plaintiff.

*Mr. George C. Witte, Jr.,* for defendants Zofia Rzasa *et al.* (*Messrs. McCarter & English,* attorneys).

*Mr. Herbert D. Kelleher,* for estate of Walter Kielb, Jr. (*Messrs. Lum, Fairlie & Foster,* attorneys).

*Mr. George Warren,* guardian *ad litem* for Blanche Mytych.

MINTZ, J. S. C. This action is for the construction of the last will and testament of Eva Kielb and for instructions concerning the disposition of four bank accounts. The matter has been submitted upon a stipulation of facts, briefs and oral argument.

The testatrix died on November 2, 1957, a resident of Essex County. Among her assets were four bank accounts opened by her, each entitled "Eva Kielb in trust for Walter Kielb, Jr." In her will, dated April 2, 1948, she bequeathed $2,000 to her son Walter, "to be advanced to him as soon after my decease as is practicable." She created a trust of $1,500 for her niece, Blanche Mytych, to accumulate the income during her minority and to pay it and the *corpus* to her when she reached 21. The residue of her estate was placed in trust, the income to be paid to Walter for ten years after her death, at which time he was to receive the *corpus* absolutely. The will provided for gifts over to Walter's issue if he died before the expiration of the ten-year period leaving issue, and to Mrs. Kielb's brother, sisters and niece Blanche, if he died without issue. On August 22, 1960, during the pendency of this action, Walter

Kielb, Jr. died without issue at the age of 44. His administrator *c. t. a.* has been substituted as a party defendant. The residuary legatees under the will of Eva Kielb and the legatee under Walter's will dispute the ownership of the four accounts.

These accounts are:

1. Howard Savings Institution (herein referred to as Howard), #544437, opened October 1931, with a balance at date of death of $10,226.69.
2. Howard, #C–1798, opened November 8, 1950, with a balance at date of death of $7,415.20.
3. Dime Savings Institution (herein referred to as Dime Savings), #183136, opened November 14, 1946 (now #180406 in United States Savings Bank, Newark), with a balance at date of death of $6,195.78.
4. Franklin Savings Institution (herein referred to as Franklin), #111099, opened April 2, 1948, with a balance at date of death of $6,090.

Walter was testatrix's only child and lived with her at the time of her death. He was not aware of the existence of the four bank accounts until after his mother's death. None of the funds in these bank accounts were contributed by him, and he never made any withdrawals from the accounts in her lifetime. Mrs. Kielb made several withdrawals from the account in the "Howard" opened in 1931. She withdrew from the "Franklin" account the sum of $717.61 on January 24, 1957, leaving a balance of $6,000. She made no withdrawals from the "Dime Savings" account or from the other "Howard" account which she opened on November 8, 1950.

At the time of her death Mrs. Kielb possessed real property valued at $21,000. In addition to the four bank accounts, the subject of this litigation, she had a fifth bank account in her own name in which there was on deposit $2,270. The total cash in the four accounts entitled in trust for Walter, plus the account solely in her name, approximated $32,200. In addition, she also held bonds valued at $5,700. Thus, the bank accounts opened by her in trust for Walter,

with a total balance of $29,927.67, constituted her principal liquid assets.

N. J. S. A. 17:9A–216 et seq. (L. 1954, c. 209, § 4, p. 776), the statute presently in effect pertaining to trust bank accounts, expressly provides:

"This act shall take effect immediately, but shall apply only to accounts hereafter opened. Accounts heretofore opened shall be governed by the law in effect when such accounts were opened."

The statute in effect when the first account was opened in the Howard was L. 1903, c. 210. That statute provided:

"Whenever any deposit shall be made by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust shall have been given to the trust company, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, may be paid to the person for whom the said deposit was made, or to his or her legal representatives; provided, that the person for whom the deposit was made, if a minor, shall not draw the same during his or her minority without the consent of the legal representatives of said trustee."

A similar statute was passed in 1906 which applied to savings banks. L. 1906, c. 195, § 26. The next pertinent legislation was L. 1932, cc. 40–43 which later was incorporated in R. S. 17:9–4.

The decisional law pertaining to accounts opened prior to any statutory enactment is clearly set forth in Nicklas v. Parker, 69 N. J. Eq. 743 (Ch. 1905), affirmed 71 N. J. Eq. 777 (E. & A. 1907). There the decedent opened an account in a savings bank in 1898 in her own name in trust for another. She died on January 13, 1904. She had made small deposits during her lifetime, and only one withdrawal. The court said, 69 N. J. Eq., at page 747:

" 'The one thing necessary to give validity to a declaration of trust —the indispensable thing—I take to be that the donor or grantor, or whatever he may be called, should have absolutely parted with that interest which had been his up to the time of the declaration;

should have effectually changed his right in that respect, and put the property out of his power, at least in the way of interest.'

The depositor in the case in hand did not so circumstance herself. By retaining the pass-book, and refraining from disclosing to anyone her intention with respect to the money deposited, she retained complete dominion and complete interest.

While the courts, in the many cases which have dealt with the intention with respect to gifts and trusts, have refused to lay down any arbitrary, inflexible rule, they substantially agree that something more is necessary with respect to deposits in banks than the mere opening of the account in the name of the depositor in trust for another. This may have been done for any one of a number of reasons, each without donative purpose. There must be some unequivocal act or declaration clearly showing that an absolute gift or trust was intended."

The effect of the 1903 statute was determined in *Jefferson Trust Co. v. Hoboken Trust Co.*, 107 *N. J. Eq.* 310 (*Ch. 1930*). There the decedent in 1921 opened a savings account in a trust company in her own name as trustee for another. She made several deposits in her lifetime and only one withdrawal for her personal use prior to her death in 1929. The court held that decedent exercised complete control over the account in question during her lifetime, and that she did not part with the bank deposit book. It cited with approval the holding in *Nicklas v. Parker, supra,* and after quoting the 1903 statute stated, at *page* 313:

"The evident purpose of the aforesaid statutory provision is merely to protect a trust company from liability in the event of its making payment 'to the person for whom the said deposit was made or to his or her legal representatives.'"

It concluded that the proofs did not support a finding of a gift or *inter vivos* trust, and awarded the fund in question to the decedent's estate.

Respecting the 1931 Howard account, the proof obviously does not support a finding of a gift or *inter vivos* trust. As is true of all the accounts, Walter was unaware of the existence of this one and contributed nothing to it. Only after Mrs. Kielb's death did Walter find the five bank books and his mother's will in a metal box which she kept at home.

Many withdrawals were effected from the 1931 Howard account by the decedent in her lifetime. There is no clear showing of an intention on the part of the decedent to part with control and establish an *inter vivos* trust or gift as to this account.

The disposition of the remaining three bank accounts is controlled by the statutes enacted in 1932, namely, *L.* 1932, *cc.* 40–43 which, as incorporated into *R. S.* 17:9–4, provided that:

"When a deposit has been or shall be made in a bank, savings bank or trust company by a person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust has been given in writing to the bank, savings bank or trust company, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, shall be paid to the person in trust for whom the deposit was made, or to his legal representative and the legal representative of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee. If the person for whom the deposit was made is a minor, he shall not draw the deposit during his minority without the written consent of the legal representative of the trustee."

*R. S.* 17:9–4 was repealed by *N. J. S. A.* 17:9A–216 (*L.* 1948, *c.* 67, § 216, *p.* 350), which was substantially to the same effect as the repealed statute. The 1948 statute became effective on September 16, 1948. It was further amended by *L.* 1949, *c.* 286, § 1, *p.* 880. Chronologically, the 1949 amendment would be applicable to the last-opened Howard account. This statute was, however, held unconstitutional in *Howard Savings Institution v. Quatra,* 38 *N. J. Super.* 174 (*Ch. Div.* 1955), and it was there further held that the transaction is governed by the next preceding statute in point, namely, *c.* 67 of *L.* 1948, *art.* 35, § 216. Since the 1948 enactment is substantially the same as the statute that preceded it, namely, *R. S.* 17:9–4, the decisional law construing *R. S.* 17:9–4 is decisive with respect to the remaining three bank accounts.

*R. S.* 17:9–4 was the subject of varied interpretation on the trial level. Compare *Thatcher v. Trenton Trust Co.,* 119 *N. J. Eq.* 408 (*Ch.* 1936), and *Travers v. Reid,* 119 *N. J. Eq.* 416 (*Ch.* 1936), with *Hickey v. Kahl,* 129 *N. J. Eq.* 233 (*Ch.* 1941), and *Abruzzese v. Oestrich,* 138 *N. J. Eq.* 33 (*Ch.* 1946). These differences in opinion were resolved in *Bendix v. Hudson County National Bank,* 142 *N. J. Eq.* 487 (*E. & A.* 1948). There the controversy was over title to a savings account opened in 1944 by A in trust for B. The court pointed out that the form of the account was inconclusive and that a claimant's interest in a deposit depended upon whether the depositor intended to make a gift to him or create a trust in his favor. In addition to the requisite intent, there must be in the case of a gift an effective delivery, and in the case of a trust a parting by the settlor with his prior interest in the property. The court said that, apart from statute, an attempt by the depositor to give the *cestui* an interest only upon the depositor's death would be invalid because testamentary, and further, that the essentials of an *inter vivos* gift were lacking. An unequivocal act or declaration clearly showing that an absolute gift or trust was intended is necessary. It concluded that the effect of *R. S.* 17:9–4 was that:

"* * * Apart from the protection afforded the depositary, the evident purpose was to raise, as between the depositor and the putative *cestui inter se,* a rebuttable presumption of an *inter vivos* gift or trust from the form of the account, nothing more." 142 *N. J. Eq.,* at *p.* 492.

In *Howard Savings Institution v. Baronych,* 8 *N. J. Super.* 599 (*Ch. Div.* 1950), the plaintiff bank sought instructions regarding the distribution of a savings account opened by one Max Gluck on June 1, 1933 in the name of "Max Gluck, Trustee for Charity Fund of Village Koniuchy, Poland." No withdrawals from or additions to the account were made, except the accumulation of interest. Mr. Gluck's will and three codicils were all dated in 1939. The final codicil re-

ferred to the same trust account, and made provision for the administration of this fund by persons designated in the codicil. The court adopted the rationale of *Bendix* and concluded that the presumption of gift from the form of account was rebutted by the fact that Gluck at all times retained control over it, and that no valid *inter vivos* gift or trust was established.

Mrs. Kielb undoubtedly intended the four bank accounts to pass under her will. Each account was entitled in trust for Walter, but the details of that trust were set forth in her will. Significantly, she opened the Franklin account on the very day she made her will. She retained control over that account and presumably intended it to be a part of her testamentary disposition. If she had intended that Walter acquire unrestricted ownership of the disputed funds at the time of her death, either by gift or *inter vivos* trust, she would not have bequeathed him the sum of $2,000 absolutely, and would not have set up a ten-year trust for him in her will. As already noted, the four bank accounts constituted the major part of her liquid assets, and about 50% of her total estate. It was stipulated that Walter had frequently been seen in an intoxicated condition during the last seven or eight years by one of the plaintiff's attorneys. Perhaps this tendency to intoxication was a factor which prompted Mrs. Kielb to create a testamentary trust for her mature son.

It is urged that Mrs. Kielb made no withdrawals from the Dime Savings and the last-opened Howard accounts, and hence these accounts should be treated differently. The fact that withdrawals were made is certainly evidence of retention of control. The absence of withdrawals does not imply a surrender of dominion over the accounts. In *Nicklas v. Parker, supra,* and *Jefferson Trust Co. v. Hoboken Trust Co., supra,* there was only one withdrawal from each account. In *Howard Savings Institution v. Baronych, supra,* there was no withdrawal and yet the court there concluded that the testator retained control over the fund. In the instant case, the testatrix possessed five bank ac-

counts. Of the four trust accounts, she withdrew from the first-opened Howard account extensively. This was adequate for her needs. Under these circumstances there was no necessity for her to resort to the remaining accounts, since she also had a fifth account in her name exclusively.

With respect to the final Howard account, which chronologically would be governed by *N. J. S. A.* 17:9A–216 (*L.* 1949, *c.* 286), I am urged to depart from *Quatra, supra,* where that statute was held invalid. It provides that the depositor in making deposits as trustee for a named beneficiary shall be conclusively presumed to intend to create a trust of such deposits, revocable by the trustee at will during the lifetime of the beneficiary, by and to the extent of withdrawals, and if the beneficiary survives the trustee, the balance in the account shall vest in the beneficiary despite evidence of contrary intent. While *Quatra* has been criticized, 5 *New Jersey Practice (Clapp, Wills and Administration)*, § 7, *n.* 6–21, 1960 pocket part; Tischler, "Trusts," 11 *Rutgers L. Rev.* 328 (1956); Sands, "Legislation," 11 *Rutgers L. Rev.* 10–16 (1956), the decision in that case was rendered by a court of coordinate jurisdiction. I will adhere to it. See the *dictum* of the trial court quoted in *Chary v. First Savings & Loan Ass'n of Little Falls,* 32 *N. J.* 418, 423 (1960).

The presumption of gift or *inter vivos* trust from the form of the last three accounts is rebutted by the facts hereinbefore detailed. Clearly, Mrs. Kielb retained control over all the accounts. She did not divest herself of dominion or ownership in any of them. There was no valid *inter vivos* gift or trust established. I conclude that the funds in all four of the designated bank accounts are to be administered in accordance with paragraph Fourth of Mrs. Kielb's will.

A form of judgment consistent with the views herein expressed will be presented, consented to as to form, or to be settled on notice.